**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE COLLEGE ATHLETE COMPENSATION ANTITRUST LITIGATION** | **MDL No. _____** |

**MOTION OF PLAINTIFFS FOR TRANSFER OF ACTIONS TO THE
NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiffs DeWayne Carter, Nya Harrison, and Sedona Prince ("Plaintiffs"), the named

plaintiffs in the putative class action *Carter et al. v. National Collegiate Athletic Association et al.*,

Northern District of California Case No. 3:23-cv-06325-RS, respectfully move this Panel, pursuant

to 28 U.S.C. §1407, for transfer of the related action, *Fontenot v. National Collegiate Athletic

Association et al.*, District of Colorado Case No. 1:23-cv-03076-CNS-STV, to the Northern

District of California.

DATED:  January 16, 2024

By:  */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler
David L. Greenspan
David G. Feher
Adam I. Dale
Sarah L. Viebrock
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dgreenspan@winston.com
dfeher@winston.com
aidale@winston.com
sviebrock@winston.com

Jeanifer E. Parsigian
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

Steve W. Berman
Emilee N. Sisco
Stephanie A. Verdoia
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Counsel for Plaintiffs Carter, Harrison, and Prince*

**BEFORE THE UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE COLLEGE ATHLETE COMPENSATION ANTITRUST LITIGATION** | **MDL No. _____** |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS .................................................................................... 2

III.   ARGUMENT ........................................................................................................ 5

    A.   Transfer of the NCAA Athlete Compensation Class Actions for Coordination and Consolidation Is Appropriate Under 28 U.S.C. § 1407 ............................... 5

        1.   These Actions Involve Numerous Common Questions of Fact and Law ................. 5

        2.   Consolidation in a Single Judicial District Will Convenience the Parties and Witnesses and Promote the Just and Efficient Conduct of the Actions .................... 7

    B.   The Northern District of California Is the Proper Transferee Forum ............................ 12

        1.   The Northern District of California Is the Most Convenient Forum ....................... 12

        2.   The Northern District of California Has the Superior Experience, Expertise and Resources to Efficiently Manage This Litigation ............................................... 13

        3.   The Strong Nexus Between the Northern District of California and the Parties to the Current Litigation .................................................................................. 16

        4.   Chief Judge Seeborg Is Particularly Well-Suited to Preside Over This Litigation .................................................................................................................. 18

IV.    CONCLUSION ..................................................................................................... 19

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*,
   600 F. Supp. 3d 1345 (J.P.M.L. 2022)........................................................................19

*In re Allegheny Energy, Inc., Sec. Litig.*,
   259 F. Supp. 2d 1368 (J.P.M.L. 2003) ......................................................................17

*In re Antibiotic Drugs Antitrust Litig.*,
   384 F. Supp. 607 (J.P.M.L. 1974)..............................................................................15

*In re: Aon Corp. Wage & Hour Emp. Pracs. Litig.*,
   581 F. Supp. 2d 1376 (J.P.M.L. 2008)..................................................................10, 11

*Carter v. NCAA*,
   No. 3:23-cv-06325-RS (N.D. Cal. Dec. 7, 2023) ............................................ *passim*

*In re Cintas Corp. Overtime Pay Arb. Litig.*,
   444 F. Supp. 2d 1353 (J.P.M.L. 2006)........................................................................11

*In re College Athlete NIL Litig.* ("*House v. NCAA et al.*")
   No. 4:20-cv-03919-CW (N.D. Cal) ....................................................................2, 7, 13

*In re Deere & Co. Repair Servs. Antitrust Litig.*,
   607 F. Supp. 3d 1350 (J.P.M.L. 2022)......................................................................6, 9

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
   403 F. Supp. 2d 1358 (J.P.M.L. 2005)........................................................................16

*In re Diisocyanates Antitrust Litig.*,
   341 F. Supp. 3d 1376 (J.P.M.L. 2018)......................................................................7, 9

*In re Direct Purchaser Plaintiff Beef Antitrust Litig.*,
   609 F. Supp. 3d 1412 (J.P.M.L. 2022)..........................................................................6

*In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*,
   2022 WL 5408779 (J.P.M.L. 2022)............................................................................19

*In re First Nat'l Bank, Heavener, Okla. (First Mortg. Revenue Bonds) Sec. Litig.*,
   451 F. Supp. 995 (J.P.M.L. 1978)................................................................................9

*In re: Fluidmaster, Inc.*,
   65 F. Supp. 3d 1397 (J.P.M.L. 2014)....................................................................12, 16

*Fontenot v. NCAA*,
    No. 1:23-cv-03076-CNS-STV (D. Colo. Nov. 20, 2023) ................................................. *passim*

*In re: Google Play Store Antitrust Litig.*,
    No. 3:21-md-02981 (N.D. Cal. 2021) ....................................................................................15

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
    398 F. Supp. 2d 1371 (J.P.M.L. 2005)..................................................................................16

*In re H & R Block Mortg. Corp. Prescreening Litig.*,
    435 F. Supp. 2d 1347 (J.P.M.L. 2006)..................................................................................10

*In re Hair Relaxer Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    655 F. Supp. 3d 1374 (J.P.M.L. 2023)....................................................................................8

*In re Halftone Separations (´809) Pat. Litig.*,
    547 F. Supp. 2d 1383 (J.P.M.L. 2008)..................................................................................16

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
    344 F. Supp. 2d 755 (J.P.M.L. 2004)......................................................................................9

*Hubbard v. NCAA*,
    No. 4:23-cv-01593-CW (N.D. Cal) ..................................................................................2, 13

*In re Hydrogen Peroxide Antitrust Litig.*,
    374 F. Supp. 2d 1345 (J.P.M.L. 2005)....................................................................................7

*In re Inclusive Access Course Materials Antitrust Litig.*,
    482 F. Supp. 3d 1358 (J.P.M.L. 2020)....................................................................................6

*In re: Juul Labs, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    No. 3:19-md-02913-WHO (N.D. Cal. 2019) (Orrick, J.) ......................................................15

*In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    24 F. Supp. 3d 1361 (J.P.M.L. 2014)......................................................................................8

*In re Metoprolol Succinate Pat. Litig.*,
    329 F. Supp. 2d 1368 (J.P.M.L. 2004)..................................................................................16

*In re: MI Windows & Doors, Inc., Prods. Liab. Litig.*,
    857 F. Supp. 2d 1374 (J.P.M.L. 2012)....................................................................................8

*In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litig*,
    No. 4:14-md-02541-CW (N.D. Cal.), *aff'd sub nom. NCAA v. Alston*, 141 S.
    Ct. 2141 (2021) ............................................................................................................8, 12, 13

*In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litigation*,
    24 F. Supp. 3d 1366 (J.P.M.L. 2014)........................................................................6, 8, 11, 15

iii

*In re Novartis Wage & Hour Litig.*,
   460 F. Supp. 2d 1382 (J.P.M.L. 2006)........................................................................16

*O'Bannon v. NCAA*,
   No. 4:09-cv-03329-CW (N.D. Cal.) ......................................................................13, 17

*In re One Apus Container Ship Incident on Nov. 30, 2020*,
   2022 WL 2127331 (J.P.M.L. 2022).......................................................................19

*In re: Optical Disk Drive Prods. Antitrust Litig.*,
   No. 3:10-md-02143-RS (N.D. Cal. 2010)..............................................................15, 19

*In re Plumbing Fixtures*,
   308 F. Supp. 242 (J.P.M.L. 1970)...........................................................................9

*In re: Polyurethane Foam Antitrust Litig.*,
   753 F. Supp. 2d 1376 (J.P.M.L. 2010)...................................................................18

*In re Procter & Gamble Aerosol Prods. Mktg. & Sales Pracs. Litig.*,
   600 F. Supp. 3d 1343 (J.P.M.L. 2022)...................................................................19

*In re Profemur Hip Implant Prods. Liab. Litig.*,
   481 F. Supp. 3d 1350 (J.P.M.L. 2020)....................................................................8

*In re: Protegrity Corp. & Protegrity USA, Inc., Pat. Litig.*,
   84 F. Supp. 3d 1380 (J.P.M.L. 2015).....................................................................14

*In re: Qualcomm Antitrust Litig.*,
   No. 3:17-md-02773-JSC (N.D. Cal. 2017) ............................................................15

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   289 F. Supp. 3d 1332 (J.P.M.L. 2018)....................................................................6

*In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*,
   412 F. Supp. 3d 1344 (J.P.M.L. 2019)....................................................................7

*In re Sugar Indus. Antitrust Litig.*,
   395 F. Supp. 1271 (J.P.M.L. 1975).........................................................................9

*In re: TD Bank, N.A., Debit Card Overdraft Fee Litig.*,
   96 F. Supp. 3d 1378 (J.P.M.L. 2015).....................................................................17

*In re Wholesale Grocery Prods. Antitrust Litig.*,
   663 F. Supp. 2d 1380 (J.P.M.L. 2009)...................................................................16

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
   No. 3:20-md-02966-RS (N.D. Cal.).......................................................................19

**Statutes**

28 U.S.C. § 1407 ............................................................................................... *passim*

**Other Authorities**

*DIA Is the 6th Worst Airport in America. Clearly.*, 99 The Point (Dec. 5, 2023),
    https://999thepoint.com/dia-is-the-6th-worst-airport/ ..........................................13

Lex Machina, Results for Judge Charlotte Noelle Sweeney, https://
    law.lexmachina.com/federal-court/district/judge/12007541/cases?pending-
    from=2009-01-01&filters=true&view=analytics&tab=summary&cols=475.........................19

Lex Machina, Results for Judge Richard G. Seeborg, https://law.lexmachina.com/
    cases/?pending-from=2009-01-01&judge-include=3229&filters=true&tab=
    summary&view=analytics&cols=475 .....................................................................18

Lex Machina, Results for Judge Richard G. Seeborg, https://law.lexmachina.com/
    cases/?case_tags-include=284&pending-from=2009-01-01&pending-
    to=&judge-
    include=3229&filters=true&tab=summary&view=analytics&cols=475 ..............................18

Lex Machina, Results for Judge Richard G. Seeborg, https://law.lexmachina.com/
    cases/?case_types-include=89&pending-from=2009-01-01&pending-
    to=&judge-
    include=3229&filters=true&tab=summary&view=analytics&cols=475 ..............................19

MULTIDISTRICT LITIGATION MANUAL (2023) ..........................................................6, 9

N.D. Cal. L.R. 3-12(a)(1).................................................................................14

Pete Thamel, *ACC Adding Stanford, Cal, SMU as New Members in 2024*, ESPN
    (Sept. 1, 2023), https://www.espn.com/college-sports/story/_/id/38304694/
    sources-acc-votes-invite-stanford-cal-smu ...........................................................17

United States Courts, United States District Courts - National Judicial Caseloads
    (Sept. 30, 2023), https://www.uscourts.gov/file/76945/download .........................................15

**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE COLLEGE ATHLETE COMPENSATION ANTITRUST LITIGATION** | **MDL No. _____** |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO
THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## I.     INTRODUCTION

As of the date of this motion, two putative class action antitrust lawsuits have been filed by current or former college athletes at National Collegiate Athletic Association ("NCAA") member universities who have been prohibited from receiving market-value compensation for their athletic services by Defendants NCAA, and its most powerful athletic conference members, Defendants The Big Ten Conference, Inc., The Big Twelve Conference, Inc., the Southeastern Conference, the Atlantic Coast Conference, and The Pac-12 Conference (the "Power Five Conferences" and collectively with the NCAA, the "Defendants").   *See* Schedule of Actions, filed herewith.   One action—*Fontenot v. NCAA et al.*—was filed in the District of Colorado.   The other—*Carter v. NCAA et al.*—was filed in the Northern District of California, which, for nearly 15 years, has capably presided over several complex antitrust litigations challenging NCAA rules restricting athlete compensation and benefits, including *Alston v. NCAA et al.*, which was unanimously upheld by the Supreme Court.

*Carter* and *Fontenot*—collectively referred to herein as the "NCAA Athlete Compensation class actions"—arise out of a common nucleus of operative facts and contain substantially similar factual allegations and legal claims.   Plaintiffs DeWayne Carter, Nya Harrison, and Sedona Prince (the "*Carter* Plaintiffs") believe that consolidation of these related actions in the Northern District

of California is appropriate under 28 U.S.C. § 1407 because it will enable the coordination of two overlapping putative class actions, serve the convenience of the parties and witnesses, and promote the just, fair, and efficient conduct of both litigations.  The law is clear that centralization and coordination is almost always required where overlapping putative class actions in different districts assert substantially the same claims against the same defendants.

The *Carter* Plaintiffs submit that the Northern District of California is the appropriate forum for coordination or consolidation of all related actions, and that related actions not pending in that District should be transferred there, for the following reasons:

- Many related cases challenging NCAA compensation restraints under the antitrust laws have been litigated in the Northern District of California, which, as a result, has extensive precedent that will efficiently guide the procedural and substantive law of these cases. More broadly, the Northern District of California has handled scores of other complex MDLs and antitrust matters.

- The Northern District of California has related *Carter* formally to two antitrust class actions challenging NCAA compensation rules, which are also currently pending in that District.

- Nya Harrison—a named plaintiff in *Carter*—is a resident of Palo Alto, California and attends Stanford University, which is located in the Northern District of California; Defendant Pac-12 Conference has its primary place of business in the Northern District of California; and none of the Defendants have any substantial connection to the District of Colorado.

- The Northern District of California is easily accessible to all parties and well-served by three major airports within the District.

- Chief Judge Richard Seeborg, the judge assigned to *Carter* in the Northern District of California, is particularly well-suited to handle this complex antitrust matter, as he is a seasoned jurist with significant MDL experience and the chief judge in a district that has presided over several similar cases against the Defendants challenging the NCAA's restraints on athlete compensation and benefits.

## II.    <u>STATEMENT OF FACTS</u>

On December 7, 2023, the *Carter* Plaintiffs—represented by the same attorneys that litigated *Alston v. NCAA et al.*, and that are currently representing a certified class of college athletes in *House v. NCAA et al.* and a putative class in *Hubbard v. NCAA et al.*, all in the Northern District of California—filed a putative antitrust class action complaint in the Northern District of

California on behalf of certain current or former college athletes at NCAA member universities who have been prohibited from receiving competitive market-value compensation for their athletic services.  *See* Complaint, *Carter v. NCAA et al.*, No. 3:23-cv-06325-RS (N.D. Cal. Dec. 7, 2023), ECF No. 1 (the "*Carter* Complaint" attached hereto as Exhibit 1).  Specifically, the *Carter* Plaintiffs allege that the Defendants have unlawfully agreed—in violation of federal antitrust laws—to cap the types of compensation that NCAA member conferences and schools may provide to college athletes, including a categorical ban on compensation for the athletes' athletic services (*i.e.*, no "pay for play").

The *Carter* Plaintiffs seek declaratory and injunctive relief on behalf of ***all*** college athletes who competed on a Division I athletic team at any time between December 7, 2023, and the date of judgment in the matter.  The injunctive relief class seeks an injunction permanently restraining Defendants from enforcing their rules barring "pay for play."

The *Carter* Plaintiffs also assert antitrust damages on behalf of all current and former college athletes who competed on a Power Five Conference or Notre Dame basketball or football team at any time between December 7, 2019 and the date of judgment in the matter.  This putative class seeks damages for the compensation these athletes would have received absent Defendants' unlawful restraints on pay for play.

Another putative antitrust class action complaint has been filed on behalf of ***some*** current and former Division I college athletes who were prohibited by the NCAA and the Power Five Conferences from receiving payments for their athletic services.  *See* Complaint, *Fontenot v. NCAA et al.*, No. 1:23-cv-03076-CNS-STV (D. Colo. Nov. 20, 2023), ECF No. 1 (the "*Fontenot* Complaint" attached hereto as Exhibit 2).  Like *Carter*, Plaintiff Fontenot alleges that the NCAA

and the Power Five Conferences have unlawfully agreed to prohibit athletes from receiving certain types of compensation from NCAA member conferences and schools.

Plaintiff Fontenot seeks a declaration that the NCAA's and Power Five Conferences' rules prohibiting such compensation are unlawful under the federal antitrust laws. The class seeks an injunction permanently restraining the NCAA and the Power Five Conferences from agreeing to restrict athletes from receiving a share of television and other revenues that athletes would otherwise receive in exchange for their athletic services in a competitive market not subject to NCAA restraints. Plaintiff in the *Fontenot* action also seeks damages on behalf of the class for the compensation they would have otherwise received absent Defendants' unlawful rules.

Although the putative classes in *Carter* are far broader, the *Carter* and *Fontenot* Plaintiffs challenge the same anticompetitive conduct (Defendants' rules barring "pay for play")[1] on behalf of an overlapping class of athletes (football and men's and women's basketball Division I athletes who received full scholarships from Power Five Conference schools or Notre Dame)[2] in the same alleged markets (the nationwide markets for the athletes' services)[3] against the same Defendants (the NCAA and the Power Five Conferences), and seek the same relief (a permanent injunction against the Defendants to prevent them from enforcing rules prohibiting pay for play and damages to the football- and basketball-athlete class members for the compensation they would have otherwise received absent the challenged restraints).[4]

---

[1] *See Carter* Compl. ¶¶ 190–200, 202–12; *Fontenot* Compl. ¶¶ 11–13, 120–22.
[2] *Compare Carter* Compl. ¶¶ 173–74 (seeking to represent *all* college athletes who competed on a Division I athletic team from December 7, 2023 through the date of judgment and *all* Power Five Conference or Notre Dame basketball and football players from December 7, 2019 through the date of judgment), *with Fontenot* Compl. ¶ 35 (seeking to represent only Power Five Conference or Notre Dame basketball and football players who received full scholarships "from the beginning of the statute of limitations period, as determined by the Court, through judgment in th[e] matter").
[3] *Carter* Compl. ¶ 90; *Fontenot* Compl. ¶ 102.
[4] *See Carter* Compl. ¶¶ 14–15, 199–200, 211–12; *Fontenot* Compl. ¶¶ 22, 122–23, 126.

Each action is in its infancy.  Defendants have not responded to either complaint, no discovery has taken place, and no initial case management conference has taken place in either litigation.  The Northern District of California has, however, declared that *Carter* is related to two other active antitrust class actions challenging some of the Defendants' other compensation rules, which are currently pending in that District.  *See* Related Case Order, *Carter v. NCAA et al*, No. 3:23-cv-06325-RS (N.D. Cal. Dec. 15, 2023), ECF No. 20 ("*Carter* Related Case Order").

## III.   ARGUMENT

### A.   Transfer of the NCAA Athlete Compensation Class Actions for Coordination and Consolidation Is Appropriate Under 28 U.S.C. § 1407

The Panel should transfer and consolidate the NCAA Athlete Compensation class actions in a single district because: (1) the actions involve numerous common questions of fact and law; and (2) consolidation will convenience the parties and witnesses and will promote the just and efficient conduct of this litigation.  *See* 28 U.S.C. § 1407(a).

### 1.   These Actions Involve Numerous Common Questions of Fact and Law

When multiple actions pending in different districts contain one or more common questions of fact, such actions may be coordinated or consolidated in one district for pretrial proceedings. *See* 28 U.S.C. § 1407(a).  The NCAA Athlete Compensation class actions share multiple common questions of fact and law, including:

   a.   whether class action treatment is appropriate;

   b.   whether Defendants conspired to limit the compensation available to members of the classes;

   c.   whether Defendants' conduct caused members of the classes to receive less compensation than they would have received in a competitive market;

   d.   whether Defendants violated Section 1 of the Sherman Act;

   e.   the appropriate measure of damages sustained by the plaintiff classes;

   f.   the existence of class-wide methods for measuring damages; and

g.    whether injunctive relief is appropriate.

These common issues are more than sufficient for the Panel to order the transfer, consolidation, and coordination of these actions to a single judicial district.

The Panel came to the same conclusion in *In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litigation*, where it transferred to the Northern District of California two previous putative class actions on behalf of college athletes that involved similar antitrust challenges to the NCAA's compensation and benefit rules.  24 F. Supp. 3d 1366, 1367–68 (J.P.M.L. 2014).  Similarly, here, denying transfer because such complex and hotly contested litigations could be "amenable to informal coordination seems overly optimistic."  *See id.* at 1367.

Indeed, complex antitrust actions, like the NCAA Athlete Compensation class actions, are "a category of actions that the Panel almost inevitably orders transferred if there are multiple actions pending in different districts." Multidistrict Litigation Manual § 5:14 (2023).  For example, the Panel routinely orders centralization where, as here, actions pending in different districts involve the same central antitrust allegations.  *See, e.g.*, *In re Direct Purchaser Plaintiff Beef Antitrust Litig.*, 609 F. Supp. 3d 1412, 1413 (J.P.M.L. 2022) (centralizing antitrust actions that "share[d] factual questions arising from plaintiffs' allegations that . . . defendants exploited their market power . . . by conspiring to limit the supply, and fix the prices, of beef sold in the U.S. wholesale market"); *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (J.P.M.L. 2022) (centralizing antitrust actions that "share[d] factual issues arising from allegations that, through various anticompetitive practices, [defendant] ha[d] monopolized the [alleged] market"); *In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp. 3d 1358, 1358–59 (J.P.M.L. 2020) (centralizing antitrust actions that arose "from a common factual core," even though the plaintiffs purported to represent different classes); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 289 F. Supp. 3d 1332, 1334 (J.P.M.L. 2018) (centralizing

6

antitrust actions where they "share[d] factual questions arising from [defendant's] alleged anticompetitive scheme" and asserted claims "on behalf of overlapping putative classes").

> ## 2. Consolidation in a Single Judicial District Will Convenience the Parties and Witnesses and Promote the Just and Efficient Conduct of the Actions

Centralization under 28 U.S.C. § 1407 is proper when it will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation." *In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005). Under Section 1407, efficiency and convenience are served when centralization "will eliminate duplicative discovery, the possibility of inconsistent rulings on class certification and other pretrial matters, and conserve judicial and party resources." *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 412 F. Supp. 3d 1344, 1346 (J.P.M.L. 2019); *see also In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1377–78 (J.P.M.L. 2018) (centralizing antitrust actions to "eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to class certification," where actions involved "complex factual questions arising from allegations that defendants engaged in a [price-fixing] conspiracy"). Here, without transfer and consolidation, these overlapping, putative, antitrust class actions risk duplicative discovery, inconsistent rulings, overlapping classes, and the inefficient use of judicial and party resources.

***Duplicative Discovery.*** Consolidation of these actions to a single district will reduce duplicative discovery. Both complaints share substantially similar factual allegations and assert virtually the same antitrust claims against the same Defendants. Like prior antitrust litigation against these Defendants, should the actions survive the pleading stage, they will involve the production of hundreds of thousands of documents and dozens of depositions across the country. *See, e.g.*, *In re College Athlete NIL Litig.*, No. 4:20-cv-03919-CW (N.D. Cal.) (over 45 depositions

and over 158,000 produced documents); *In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-md-02541-CW (N.D. Cal.) (over 70 depositions and over 706,000 produced documents).

Plaintiffs in each action will seek substantially the same documents, data, and depositions of high-level decision makers at the NCAA, Power Five Conferences, schools, and third parties. Without consolidation, the widespread and extensive discovery needed in each action would not only be unnecessarily duplicative but costly.  This is precisely the circumstance in which the Panel has ordered centralization and coordination in the past.  *See, e.g.*, *In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 24 F. Supp. 3d at 1367–68 (ordering centralization in the Northern District of California and noting that antitrust litigation against the NCAA has "involved extensive discovery and motion practice" and is not amenable to informal coordination); *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (centralization would "ensur[e] that common witnesses are not subjected to duplicative discovery demands").  Plaintiffs in each action will also engage in extensive and overlapping expert discovery with respect to damages and market analyses.  *See, e.g.*, *In re Hair Relaxer Mktg., Sales Pracs., & Prods. Liab. Litig.*, 655 F. Supp. 3d 1374, 1376 (J.P.M.L. 2023) (actions transferred in part because "[c]entralization w[ould] minimize duplication of [] expert discovery as well as pretrial motion practice related to expert issues"); *In re Profemur Hip Implant Prods. Liab. Litig.*, 481 F. Supp. 3d 1350, 1351 (J.P.M.L. 2020) (transferring actions in part to avoid "costly expert discovery"); *In re: MI Windows & Doors, Inc., Prods. Liab. Litig.*, 857 F. Supp. 2d 1374, 1375 (J.P.M.L. 2012) ("[c]entralized proceedings w[ould] provide for the efficient conduct of discovery, particularly with respect to expert discovery, which w[ould] be common among the actions").

*The Avoidance of Inconsistent Rulings and Overlapping Classes.*  Without consolidation, the Northern District of California, the District of Colorado, and any other courts in which subsequent actions are filed will each have to make separate inquiries into a nearly identical set of facts, involving virtually the same parties and witnesses, and resolve identical legal issues and similar pretrial disputes at the same time.  Centralization will avoid the risk of inconsistent pretrial rulings, including on motions to dismiss, discovery disputes, class certification, summary judgment, and *Daubert* issues, among others.

These risks are amplified where, as here, the actions involve overlapping—but not identical—putative classes.  "[A] potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts."  *In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970); *see also* MULTIDISTRICT LITIGATION MANUAL § 5:24 (2023).  The Panel has "consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determination exists."  *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975); *see also, e.g.*, *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 344 F. Supp. 2d 755, 757 (J.P.M.L. 2004) (centralization was "necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, ***especially with respect to class certification***; and conserve the resources of the parties, their counsel and the judiciary") (emphasis added); *In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d at 1377–78 (same); *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d at 1351 (centralization will "prevent inconsistent pretrial rulings, particularly with respect to class certification"); *In re First Nat'l Bank, Heavener, Okla. (First Mortg. Revenue Bonds) Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978) (where each action

implicated the same class the court ordered consolidation in part "to prevent duplicative pretrial proceedings and eliminate the possibility of inconsistent pretrial rulings").

Here, the *Carter* action seeks to represent a declaratory and injunctive relief class of ***all*** college athletes who competed on a Division I athletic team from December 7, 2023 through the date of judgment and a damages class of all current and former college athletes who compete on a Power Five Conference or Notre Dame basketball or football team at any time between December 7, 2019 and the date of judgment.  *Carter* Compl. ¶¶ 173–74.  The *Fontenot* action seeks nearly identical declaratory and injunctive relief, as well as damages, on behalf of ***some*** college athletes, *i.e.*, those athletes who received full athletic scholarships to compete on Power Five Conference or Notre Dame football or basketball teams "from the beginning of the statute of limitations period, as determined by the Court, through judgment in th[e] matter."  *See Fontenot* Compl. ¶ 35.

Accordingly, the proposed classes in each action overlap substantially, and the entire putative class in *Fontenot* is subsumed by the broader putative *Carter* classes.  Such substantial overlap between the two putative class actions, on its own, supports consolidation or coordination. *See In re: Aon Corp. Wage & Hour Emp. Pracs. Litig.*, 581 F. Supp. 2d 1376 (J.P.M.L. 2008) (even where the class actions were not identical, "the two putative class and collective actions d[id] present overlapping factual allegations, which w[ould] likely require duplicative discovery and motion practice" and "[c]entralizing the[] actions under Section 1407 [would] streamline resolution of th[e] litigation to the overall benefit of the parties and the judiciary"); *In re H & R Block Mortg. Corp. Prescreening Litig.*, 435 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006) ("[t]he three actions contain competing class allegations and involve facts of sufficient intricacy that could spawn challenging procedural questions and pose the risk of inconsistent and/or conflicting judgments").

10

Moreover, the differences in the composition of the putative classes in *Carter* and *Fontenot* supports consolidation. Proceeding separately before different courts—and, in all likelihood, on different schedules—would create a potential race to *res judicata* or collateral estoppel, which could prejudice thousands of class members, including denying the right to a jury trial, in the event that any portion of the outcome of one case is deemed determinative of issues in the other. *See, e.g.*, *In re Cintas Corp. Overtime Pay Arb. Litig.*, 444 F. Supp. 2d 1353, 1355 (J.P.M.L. 2006) (grappling with *res judicata* and collateral estoppel concerns in related proceedings and finding centralization necessary). For example, were *Fontenot* to reach class certification before *Carter*, it could dictate the class certification outcome for some—but not all—of the overlapping putative class members in *Carter*. The *Carter* Plaintiffs would then still need to seek class certification for those Division I college athletes outside of football and basketball, who are not represented in *Fontenot*. Not only could this yield inconsistent class certification decisions *between* the two cases, it could result in different class certification outcomes *within* the broader classes that have been pleaded in *Carter*. This is untenable.

*The Efficient Use of Judicial and Party Resources.* Transfer under Section 1407 will also significantly reduce litigation costs and conserve judicial resources, as it will eliminate the need for the parties to make multiple court appearances in both the Northern District of California and the District of Colorado to resolve the same issues and engage in duplicative motion practice. "[C]onserv[ing] the resources of the parties" is a routine practice of this Panel. *In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 24 F. Supp. 3d at 1367; *see also In re: Aon Corp. Wage & Hour Emp. Pracs. Litig.*, 581 F. Supp. 2d at 1376 (streamlining motion practice as a justification for transfer).

**B.     The Northern District of California Is the Proper Transferee Forum**

In choosing a transferee forum, the Panel considers which judicial district is best suited to promote the purpose of 28 U.S.C. § 1407 in ensuring convenience of the parties and the just and efficient conduct of the litigation.   Each of these considerations favors transfer to the Northern District of California because: (1) the Northern District of California is the most convenient forum for the parties and witnesses in this matter; (2) the Northern District of California has the extensive experience, precedent, and expertise to efficiently manage this complex antitrust litigation; (3) there is a strong nexus between the Northern District of California and the parties to the current litigations; and (4) Judge Seeborg is well-suited to preside over this consolidated case.

**1.     The Northern District of California Is the Most Convenient Forum**

The Panel considers which district is the most convenient for the parties and witnesses when deciding where to transfer an MDL action.  *See* 28 U.S.C. § 1407(a) (transfers shall be made by the Panel based upon its determination that such transfers "will be for the convenience of parties and witnesses . . .").  The Northern District of California is located in an area with an abundance of hotels, taxis, rental cars, and other necessary litigation resources.  San Francisco International Airport, Oakland International Airport, and Mineta San Jose International Airport service the Northern District of California, making it easily accessible to all parties.  *See, e.g.*, *In re: Fluidmaster, Inc*., 65 F. Supp. 3d 1397, 1398 (J.P.M.L. 2014) (granting transfer to the Northern District of Illinois because "[i]t offer[ed] a geographically accessible forum for th[e] nationwide litigation").  Indeed, 17 witnesses appeared in-person in the Northern District of California during the *Alston* trial.  *See In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, Master Index of Proceedings, No. 4:14-md-02541-CW (N.D. Cal.).  Further, Defendant Pac-12 Conference is located in San Ramon, 35 miles from the San Francisco Courthouse where *Carter* is pending.

12

Nothing about the District of Colorado makes it comparatively convenient.  *Fontenot* is pending before the Denver Courthouse, and only one airport, the Denver International Airport, services the metropolitan Denver area.  The Denver International Airport has been widely criticized for its distance from the city and was recently ranked the sixth-worst large airport in the country.[5]  This would likely inconvenience all parties, as air travel to Denver would be virtually inevitable.

### 2.     The Northern District of California Has the Superior Experience, Expertise and Resources to Efficiently Manage This Litigation

The Northern District of California has extensive experience and expertise to efficiently manage this litigation because it has handled a series of similar antitrust cases challenging the NCAA's compensation restraints on college athletes —three of which it has already deemed related to *Carter*, including two pending antitrust class actions against the NCAA—for over a decade.  *See O'Bannon v. NCAA*, No. 4:09-cv-03329-CW (N.D. Cal.) (antitrust class action challenging the NCAA's use of the images and likenesses of college athletes for commercial purposes); *In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litig*, No. 4:14-md-02541-CW (N.D. Cal.), *aff'd sub nom. NCAA v. Alston*, 141 S. Ct. 2141 (2021) (antitrust class action challenging the NCAA's cap on grant-in-aid scholarships); *In re College Athlete NIL Litig.*, No. 4:20-cv-03919-CW (N.D. Cal) (pending antitrust class action challenging the NCAA's rules prohibiting college athletes from receiving compensation for their names, images and likenesses); *Hubbard v. NCAA et al.*, No. 4:23-cv-01593-CW (N.D. Cal) (pending antitrust class action seeking damages on behalf of college athletes who would have been eligible for Academic Achievement Awards prohibited by NCAA rules that *Alston* held unlawful); *Carter* Related Case Order.  Indeed,

---

[5] *DIA Is the 6th Worst Airport in America. Clearly.*, 99 The Point (Dec. 5, 2023), https://999thepoint.com/dia-is-the-6th-worst-airport/ (last visited Jan. 16, 2024).

in finding that *Carter* was related to these other cases, the Northern District of California concluded that the "actions concern substantially the same parties, property, transaction, or event."  *See* N.D. Cal. L.R. 3-12(a)(1) (cited in *Carter* Related Case Order).

Because of its extensive experience with antitrust class actions challenging NCAA compensation restraints, the Northern District of California has well-developed case law and procedures to address the myriad unique procedural and discovery issues that will arise in both *Carter* and *Fontenot*.  This experience—specific to this type of antitrust class action litigation against the NCAA's athlete-compensation rules—includes well-developed protective orders for highly-confidential third-party broadcast network contracts and other third-party discovery unique to NCAA cases, precedents for navigating the Family Educational Rights and Privacy Act's application to individual athlete scholarship and financial information, procedures for incorporating and avoiding the duplication of discovery from other (Northern District of California) NCAA litigations, and discovery orders and prior party practices concerning the scope and conduct of discovery unique to NCAA litigations (*e.g.*, depositions and third-party discovery of schools).  The Northern District of California's specialized expertise—which all other courts, including the District of Colorado, lack—strongly weighs in favor of transfer to this District.  *See, e.g.*, *In re: Protegrity Corp. & Protegrity USA, Inc., Pat. Litig.*, 84 F. Supp. 3d 1380, 1382 (J.P.M.L. 2015) (transferring to the Northern District of California because the "district is highly familiar with complex technological patent litigation").

Indeed, the unique concentration of antitrust class action litigation against the NCAA's compensation restraints in the Northern District of California has produced a wealth of precedent in the District (and in the Ninth Circuit) on the substantive antitrust issues that will govern the claims in *Carter* and *Fontenot* and the defenses that Defendants are likely to raise in response.

Other than the Ninth Circuit, no circuit has extensive precedent applying antitrust principles to NCAA compensation restraints. This factor, too, weighs in favor of transfer to the Northern District of California. *See, e.g.*, *In re Antibiotic Drugs Antitrust Litig.*, 384 F. Supp. 607, 608–09 (J.P.M.L. 1974) (transferring case where defendants' antitrust defenses "involve[d] issues raised by them in [preexisting] actions scheduled for trial in the transferee court"); *In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 24 F. Supp. 3d at 1367 (transferring antitrust class actions against NCAA compensation rules to the Northern District of California and highlighting that the District's experience with related antitrust litigation against NCAA compensation rules translated to "substantial familiarity with the factual and procedural issues" in the litigation at issue).

More broadly, the Northern District of California has handled countless complex antitrust MDL proceedings. Thus, judges in the Northern District of California are not only extremely competent but have a wealth of experience presiding over complex antitrust proceedings of this type. *See, e.g., In re: Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143-RS (N.D. Cal. 2010) (Seeborg, J.); *In re: Google Play Store Antitrust Litig.*, No. 3:21-md-02981 (N.D. Cal. 2021) (Donato, J.); *In re: Juul Labs, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 3:19-md-02913-WHO (N.D. Cal. 2019) (Orrick, J.); *In re: Qualcomm Antitrust Litig.*, No. 3:17-md-02773-JSC (N.D. Cal. 2017) (Corley, J.).

The Northern District of California also efficiently manages and moves cases, including compared to the District of Colorado. As of September 2023, the Northern District of California reported a median time from filing to disposition in civil cases of 7 months, compared to the District of Colorado's 8.5 months. And the Northern District of California reported a median time from filing to trial in civil cases of 36.7 months, only 6 more months than the District of Colorado.[6]

---

[6] United States Courts, United States District Courts – National Judicial Caseloads (Sept. 30, 2023), https://www.uscourts.gov/file/76945/download (last visited Jan. 16, 2024).

In sum, while both courts are highly capable, the Northern District of California is better suited to handle this case because of its unique and unmatched experience with similar antitrust class actions against the NCAA's athlete-compensation restraints and its extensive experience presiding over multidistrict antitrust litigation.[7]

### 3. The Strong Nexus Between the Northern District of California and the Parties to the Current Litigation

When determining where to centralize cases pursuant to 28 U.S.C. § 1407, the Panel often considers whether there is a nexus between the parties to the litigation and a particular transferee forum. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005). A nexus will exist where key facilities—*i.e.*, "where many relevant documents and witnesses"—are located. *Id.*; *see also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005).

Defendant Pac-12 Conference has its principal place of business in the Northern District of California, at 12647 Alcosta Boulevard, San Ramon, California. Relevant documents and witnesses will thus be found at the facilities in San Ramon. Further, the Northern District of

---

[7] The fact that *Fontenot* was the first-filed case does not change the analysis. *See In re Halftone Separations ('809) Pat. Litig.*, 547 F. Supp. 2d 1383, 1384–85 (J.P.M.L. 2008) (transferring actions to Central District of California, noting that the court where the first-filed action was pending (the Eastern District of Texas) "ha[d] no special connection to either the parties or the litigation's subject matter"). Indeed, first-to-file status is often only relevant insofar as it correlates to a head-start on procedural matters. *See, e.g.*, *In re Wholesale Grocery Prods. Antitrust Litig.*, 663 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) (concluding District of Minnesota was appropriate forum where "[t]he first-filed action [wa]s pending there, and pretrial proceedings in that action ha[d] proceeded efficiently"); *In re Metroprolol Succinate Pat. Litig.*, 329 F. Supp. 2d 1368, 1370 (J.P.M.L. 2004) (concluding Eastern District of Missouri was appropriate forum where it was "the location of the first-filed action and pretrial proceedings [we]re already well under way"). That is not the case here, where *Fontenot*—the first-filed case—has not progressed beyond the initial stages of the litigation. Moreover, *Carter* is the "broadest-based complaint" which weighs in favor of transfer to the Northern District of California. *In re: Fluidmaster, Inc.*, 65 F. Supp. 3d at 1398 (broadest complaint in action pending in the chosen transferee district); *see also In re Novartis Wage & Hour Litig.*, 460 F. Supp. 2d 1382, 1383 (J.P.M.L. 2006) (transferring case to district where complaint representing a broader group of employees was pending).

California is home to two schools—Stanford University and the University of California, Berkeley ("Cal")—that are currently members of the Pac-12 Conference and will soon become members of another Defendant, the Atlantic Coast Conference.[8]  This only further underscores the Defendants' connection to the District, and shows that this District would be a likely location for witnesses such as athletics administrators and current and former college athletes, across two different Conference Defendants.  In addition, Plaintiff Nya Harrison is a resident of Palo Alto, California and attends Stanford University, within the Northern District of California.   And extensive discovery records from other NCAA litigations (*i.e.*, *O'Bannon*, *Alston*, and *House*) are in the Northern District of California, and—with proper protections—can be used in *Carter* and *Fontenot*.  Based on the totality of these facts, a strong nexus exists between the parties and the Northern District of California.  *See In re Allegheny Energy, Inc., Sec. Litig*., 259 F. Supp. 2d 1368, 1369 (J.P.M.L. 2003) (the Northern District of California was an appropriate transferee forum because the corporate defendant and most of the individual defendants resided there, and the district was likely to be the location of significant discovery activity); *In re: TD Bank, N.A., Debit Card Overdraft Fee Litig.*, 96 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015) (transferring to the District of South Carolina and noting, "[a]lthough TD Bank is not headquartered in the District of South Carolina, it maintains sizeable operations in South Carolina").

By comparison, there is a minimal nexus between the parties and the District of Colorado. None of the Defendants are located in Colorado, and none have a reason to travel there frequently. Moreover, the fact that the one named plaintiff in *Fontenot* played and coached at the University of Colorado does not change the outcome of the nexus analysis because the *Fontenot* Plaintiff

---

[8] *See* Pete Thamel, *ACC Adding Stanford, Cal, SMU as New Members in 2024*, ESPN (Sept. 1, 2023), https://www.espn.com/college-sports/story/_/id/38304694/sources-acc-votes-invite-stanford-cal-smu (last visited Jan. 16, 2024).

alleges *nationwide* antitrust violations.  *See In re: Polyurethane Foam Antitrust Litig.*, 753 F. Supp. 2d 1376, 1377 (J.P.M.L. 2010) (looking to *defendants'* headquarters, caseloads of presiding judges, and geographical "concentration of *defendants*" to determine appropriate forum for litigation that consolidated actions alleging nationwide antitrust violations) (emphasis added). Finally, other than the *Fontenot* Plaintiff, it is unlikely that any other witnesses will be located in Colorado.  In the *House* and *Alston* cases, no depositions of NCAA or Power Five Conference witnesses took place in Colorado.  By contrast, there were 11 depositions (9 in *Alston* and 2 in *House*) of NCAA or Power Five Conference witnesses in California, and they all took place within the Northern District.

### 4.      Chief Judge Seeborg Is Particularly Well-Suited to Preside Over This Litigation

Chief Judge Seeborg is especially well-suited to handle these related cases for several reasons.  As a seasoned judge with significant MDL experience—including antitrust MDL experience—Judge Seeborg is well-equipped to manage the consolidated cases efficiently.  He has served on the federal bench for over 22 years and handled 3,739 federal district cases,[9] including 3 master multidistrict litigation cases, with 1,265 associated cases.[10]  Judge Seeborg's extensive experience, particularly as a judge who is "well-versed in the complexities of multidistrict litigation," weighs in favor of transfer of the case to the Northern District of California.  *See In re*

---

[9] *See* Lex Machina, Results for Judge Richard G. Seeborg, https://law.lexmachina.com/cases/ ?pending-from=2009-01-01&judge-include=3229&filters=true&tab=summary&view= analytics&cols=475 (last visited Jan. 16, 2024) (total federal district court cases).

[10] *See* Lex Machina, Results for Judge Richard G. Seeborg, https://law.lexmachina.com/ cases/?case_tags-include=284&pending-from=2009-01-01&pending-to=&judge- include=3229&filters=true&tab=summary&view=analytics&cols=475 (last visited Jan. 16, 2024) (filtered to "MDL Master Cases" and tabulating cases associated with each Master Case: *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 3:20-md-02966-RS (13 associated cases); *In Re: Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143-RS (56 associated cases); *In re: Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, No. 3:16-md-02691-RS (1,196 associated cases).

*Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, 600 F. Supp. 3d 1345, 1346 (J.P.M.L. 2022); *see also In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 2022 WL 5408779, at *2 (J.P.M.L. 2022) (transferring to skilled judge well-versed in nuances of complex and multidistrict litigation); *In re One Apus Container Ship Incident on Nov. 30, 2020*, 2022 WL 2127331, at *1–2 (J.P.M.L. 2022) (transferring to experienced transferee judge); *In re Procter & Gamble Aerosol Prods. Mktg. & Sales Pracs. Litig.*, 600 F. Supp. 3d 1343, 1344 (J.P.M.L. 2022) (transferring to experienced transferee judge with willingness and ability to manage litigation efficiently).[11]   In addition, Judge Seeborg has handled 74 federal antitrust litigations—including *In re Xyrem (Sodium Oxybate) Antitrust Litigation* (N.D. Cal. No. 3:20-md-02966-RS) and *In re: Optical Disk Drive Products Antitrust Litigation* (N.D. Cal. No. 3:10-md-02143-RS), both complex antitrust MDLs—only further underscoring his suitability for this case.[12]

## IV.   CONCLUSION

For the reasons explained above, the *Carter* Plaintiffs respectfully request that the Panel order the centralization of these related class actions for pretrial coordination or consolidation in the Northern District of California under 28 U.S.C. § 1407 "for the convenience of parties and witnesses and [to] promote the just and efficient conduct of [the] actions."

---

[11] While no doubt a highly qualified judge, Judge Sweeney—who is presiding over *Fontenot* in the District of Colorado—is a recently appointed jurist (2022), who has not yet presided over any master multidistrict litigation cases and just 3 antitrust cases.  *See* Lex Machina, Results for Judge Charlotte Noelle Sweeney, https://law.lexmachina.com/federal-court/district/judge/12007541/cases?pending-from=2009-01-01&filters=true&view=analytics&tab=summary&cols=475   (last visited Jan. 16, 2024) (separately applying filters for "MDL Master Cases" and "Antitrust" cases).
[12] Lex Machina, Results for Judge Richard G. Seeborg, https://law.lexmachina.com/cases/?case_types-include=89&pending-from=2009-01-01&pending-to=&judge-include=3229&filters=true&tab=summary&view=analytics&cols=475 (last visited Jan. 16, 2024) (filtered to "Antitrust" cases).

DATED:  January 16, 2024

By:  _/s/ Jeffrey L. Kessler_____

Jeffrey L. Kessler
David L. Greenspan
David G. Feher
Adam I. Dale
Sarah L. Viebrock
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dgreenspan@winston.com
dfeher@winston.com
aidale@winston.com
sviebrock@winston.com

Jeanifer E. Parsigian
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

Steve W. Berman
Emilee N. Sisco
Stephanie A. Verdoia
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Counsel for Plaintiffs Carter, Harrison, and Prince*

**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE COLLEGE ATHLETE COMPENSATION ANTITRUST LITIGATION** | **MDL No. _____** |

**SCHEDULE OF ACTIONS**

Attached hereto as Exhibits 1 and 2 are true and correct copies of the complaints filed in

and docket sheets of the cases listed below.

| Exhibit | Case Caption | Court | Civil Action No. | Judge(s) |
|---|---|---|---|---|
| 1 | **Plaintiff(s)**:  DeWayne Carter, Nya Harrison, and Sedona Prince<br><br>**Defendants**: National Collegiate Athletic Association; Pac-12 Conference; The Big Ten Conference, Inc.; The Big 12 Conference, Inc.; Southeastern Conference; and Atlantic Coast Conference | U.S.D.C. Northern District of California (San Francisco) | 3:23-cv-06325-RS | Judge Richard Seeborg |
| 2 | **Plaintiff(s)**: Alex Fontenot<br><br>**Defendants**: National Collegiate Athletic Association; Pac-12 Conference; The Big Ten Conference, Inc.; The Big 12 Conference, Inc.; Southeastern Conference; and Atlantic Coast Conference | U.S.D.C. District of Colorado | 1:23-cv-03076-CNS-STV | Judge Charlotte N. Sweeney<br><br>Magistrate Judge Scott T. Varholak |

DATED:  January 16, 2024

By: __/s/ Jeffrey L. Kessler_____

| | |
|---|---|
| Jeffrey L. Kessler | Steve W. Berman |
| David L. Greenspan | Emilee N. Sisco |
| David G. Feher | Stephanie A. Verdoia |
| Adam I. Dale | HAGENS BERMAN SOBOL |
| Sarah L. Viebrock | SHAPIRO LLP |
| WINSTON & STRAWN LLP | 1301 Second Avenue, Suite 2000 |
| 200 Park Avenue | Seattle, WA 98101 |
| New York, NY 10166-4193 | Telephone: (206) 623-7292 |
| Telephone: (212) 294-4698 | Facsimile: (206) 623-0594 |
| Facsimile: (212) 294-4700 | steve@hbsslaw.com |
| jkessler@winston.com | emilees@hbsslaw.com |
| dgreenspan@winston.com | stephaniev@hbsslaw.com |
| dfeher@winston.com | |
| aidale@winston.com | Benjamin J. Siegel |
| sviebrock@winston.com | 715 Hearst Avenue, Suite 202 |
| | Berkeley, CA 94710 |
| Jeanifer E. Parsigian | Telephone: (510) 725-3000 |
| 101 California Street | Facsimile: (510) 725-3001 |
| San Francisco, CA 94111 | bens@hbsslaw.com |
| Telephone: (415) 591-1000 | |
| Facsimile: (415) 591-1400 | |
| jparsigian@winston.com | |

*Counsel for Plaintiffs Carter, Harrison, and Prince*

2