STEPHEN M. TILLERY (*pro hac vice forthcoming*)
  stillery@koreintillery.com
GARRETT R. BROSHUIS (Bar No. 329924)
  gbroshuis@koreintillery.com
MARC WALLENSTEIN (*pro hac vice forthcoming*)
  mwallenstein@koreintillery.com
CAROL O'KEEFE
  cokeefe@koreintillery.com (*pro hac vice forthcoming*)
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525


GEORGE A. ZELCS (*pro hac vice forthcoming*)
  gzelcs@koreintillery.com
**KOREIN TILLERY, LLC**
205 N. Michigan Ave., Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DEWAYNE CARTER, et al., on behalf of themselves and all those similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL COLLEGIATE ATHLETEC ASSOCIATION; et al.;<br><br>Defendants. | CASE NO. 23-cv-6325<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND TO TRANSFER, DISMISS, OR CONTINUE THE STAY PURSUANT TO THE FIRST-TO-FILE RULE**<br><br>Hearing date: April 18, 2024<br>Hearing Time: 1:30 p.m.<br>Courtroom: Courtroom 3, 17th Floor<br>Judge: Honorable Richard Seeborg |

**NOTICE OF MOTION AND MOTION**

Please take notice that the Proposed Intervenors will and hereby do move for an order seeking to intervene and, pursuant to the first-to-file rule, to either transfer, dismiss, or continue the stay already entered in this action. Proposed Intervenors request that this Motion be heard on April 18, 2024 at 1:30 p.m., in Courtroom 3, 17th Floor of the U.S. District Court for the Northern District of California, San Francisco Division, before the Honorable Richard Seeborg.

This Motion is made pursuant to Federal Rule of Civil Procedure 24 and the first-to-file rule. This Motion is based upon this Notice of Motion and the accompanying Memorandum of Points and Authorities; the Declaration of Garrett Broshuis ("Broshuis Decl."); the records on file in this action; and upon additional argument as may be presented at or before the hearing on this Motion.

**STATEMENT OF THE ISSUES TO BE DECIDED**

Proposed Intervenors move the Court to:

- Grant leave to intervene for the limited purpose of making a first-to-file motion;
- Transfer, dismiss, or continue the stay in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

The first-to-file rule applies "when a complaint involving the same parties and issues has already been filed in another district." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). The "rule is intended to 'serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly.'" *Id.* (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)).

The present action is entirely subsumed by another action already on file in the District of Colorado. The Colorado action was filed on November 20, 2023 by Alex Fontenot, a former running back for the University of Colorado who still resides in Colorado. That filing prompted plaintiffs' counsel for the present action to file this case 17 days later. The two actions both allege antitrust violations against the same Defendants, caused by Defendants' bylaws that prohibit college athletes from receiving compensation at the level that a competitive market would bear. Both are brought as class actions. The proposed class in this case is subsumed by the broader proposed class in the Colorado action.

In the interest of preserving judicial resources, and in the interest of comity, Mr. Fontenot and his co-Plaintiff, Mya Hollingshed (collectively the "Proposed Intervenors"), ask this Court to permit them to intervene in the present action for the limited purpose of transferring this action to the District of Colorado pursuant to the first-to-file rule, or in the alternative, to dismiss this action or continue the stay already entered in this action. As residents of Colorado, Mr. Fontenot and Ms. Hollingshed strongly prefer to litigate in their home venue, which would be more convenient not only for them but also for the vast majority of other parties who reside much closer to Denver than to San Francisco. The Proposed Intervenors therefore respectfully ask the Court to grant this Motion.

## BACKGROUND

On November 20, 2023, Alex Fontenot filed his original complaint in the District of Colorado. *Fontenot, et al. v. Nat'l Collegiate Athletic Ass'n, et al.*, No. 1:23-cv-03076-CNS-STV (D. Col.), ECF No. 1. Mr. Fontenot is a resident of Colorado, and he worked as a college football player at the University of Colorado from 2017 to 2022. *Id.* ¶ 23. Mr. Fontenot was the starting running back

during many games for Colorado, and during his sophomore season he rushed for 874 yards and five touchdowns. *Id.* ¶ 113. That placed him on preseason watch lists for an award for the country's best running back in 2021 and 2022. *Id.* ¶ 114.

Mr. Fontenot has since amended his complaint to add Mya Hollingshed as a named plaintiff. *Fontenot*, ECF No. 78. Ms. Hollingshed, a resident of Colorado, starred as a college basketball player at the University of Colorado from 2017 to 2022. *Id.* ¶ 24. In 2022, she led Colorado to its first NCAA Tournament appearance since 2013, and she is ranked sixth on Colorado's all-time scoring and rebounding lists. *Id.* ¶ 123.

Mr. Fontenot and Ms. Hollingshed allege that Defendants engaged in wage fixing by capping their compensation at artificial levels. *Id.* ¶¶ 130-31. Defendants' member schools compete with one another for talented athletes, but their bylaws limit the types and amount of compensation that can be provided to these talented athletes—all while Defendants and their member schools rake in billions of dollars in revenue each year. Plaintiffs allege that, but for Defendants' anticompetitive restrictions, they "would have received a competitive share of the television and other revenue being brought in by Defendants and their member schools." *Id.* ¶¶ 119, 127. Thus, Defendants engaged in an illegal restraint in the college athlete labor market in violation of the Sherman Act. *Id.* ¶¶ 129-31

The Proposed Intervenors seek to enjoin Defendants from continuing the unlawful practices and seek damages, fees and costs. They seek to represent classes of similarly situated college athletes, including: "All persons who worked as athletes for a Division I athletic team at an NCAA Division I school, from the beginning of the statute of limitations period, as determined by the Court, through judgment in this matter." *Id.* ¶ 36.

On December 7, 2023 (17 days after Mr. Fontenot brought his case), a proposed antitrust class action was filed in this Court (the "present action" or "*Carter*" case) that largely duplicated the *Fontenot* case. The later-filed *Carter* case brings claims against the same Defendants as *Fontenot*. And like *Fontenot*, it claims that Defendants' rules prevent college athletes from receiving "market-value compensation" in violation of the Sherman Act. *See* Complaint, *Carter v. NCAA* No. 23-cv-6325 (N.D. Cal.), ECF No. 1 ("*Carter* Complaint") ¶ 1. But the proposed damages class in *Fontenot* is much broader than the proposed damages class in this action. *Compare Fontenot*, ECF No. 78 at ¶ 36

(reaching all athletes for all Division I schools in all sports) *with Carter*, ECF No. 1 ¶ 174 (limiting damages class to just basketball and football who worked for a subset of schools).

On January 16, 2024, the plaintiffs in *Carter* asked the Judicial Panel on Multidistrict Litigation to consolidate the *Carter* and *Fontenot* cases before this Court rather than in Colorado. They did so without any advance notice to counsel in the *Fontenot* action, without first allowing a Section 1404 transfer motion to be filed in either court, and despite the existence of only two overlapping actions. On January 25, 2024, this Court entered an order staying the *Carter* action in light of the JPML motion pursuant to a stipulation of the parties in *Carter. Carter*, ECF No. 72.

Because it is preferable for courts to use motions to transfer rather than the "last resort" of JPML litigation, this Motion is warranted and should be granted.

## ARGUMENT

### I. Mr. Fontenot and Ms. Hollingshed Should Be Permitted to Intervene for the Limited Purpose of Moving to Transfer Under the First-to-File Rule.

Under Rule 24(b), permissive intervention has three elements: timeliness, commonality, and a basis for jurisdiction. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996). All three factors are met here.

#### A. This Motion is timely.

"Timeliness is a flexible concept," *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004), but courts are guided by three considerations: (1) the stage of the proceeding; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *United States v. State of Or.*, 745 F.2d 550, 552 (9th Cir. 1984). "Mere lapse of time alone is not determinative." *Id.* Here, this case is in its infancy, so there can be no doubt regarding timeliness. Mr. Fontenot has filed this Motion less than two months after the filing of the *Carter* action, before an initial case management conference has taken place, and before Defendants have responded to the complaint. The case is currently stayed. There has been no delay and therefore no prejudice to any parties. This motion is timely.

#### B. There are common questions of law or fact.

The commonality element depends on whether the proposed intervenor shares a common question of law or fact with the case. R. 24(b). As discussed more below, and as the *Carter* plaintiffs

argued before the JPML, the claims in this case overlap with the claims first filed by the Proposed Intervenors. Both cases centrally allege that Defendants have unlawfully agreed to not pay athletes their fair share of the immense revenue that Defendants receive due to the work of these athletes in violation of the antitrust laws. *See In re College Athlete Compensation Antitrust Litig.*, MDL No. 3105 (U.S.J.P.M.L. Jan. 16, 2024), ECF No. 2-1 at 5-6 (*Carter* plaintiffs discussing the "numerous" common questions between the two cases). Commonality is satisfied.

### C. There is federal question jurisdiction under the Sherman Act.

The Court has an independent basis for jurisdiction over the Proposed Intervenors' claims because they fall under the federal Sherman Act, meaning that federal question jurisdiction exists.

\*         \*         \*

All the elements for intervention are met here. No party will be prejudiced at this early stage, and the intervention is necessary to determine whether the Court deems it proper to transfer this case to the District of Colorado under the first-to-file rule.

## II. The District of Colorado is the Proper Forum Under the First-to-File Rule

### A. The first-to-file factors all favor transfer.

Under the first-to-file rule, "district courts have discretion to transfer, stay, or dismiss an action if the same parties and issues are already at issue in a proceeding before another district court." *Keller v. Amazon.com*, Inc., No. 17-CV-02219-RS, 2019 WL 13113043, at \*1 (N.D. Cal. Oct. 23, 2019) (Seeborg, J.) (quoting *Hoyt v. Amazon.com, Inc.*, 2019 WL 1411222, at \*3 (N.D. Cal. Mar. 28, 2019). In the Ninth Circuit, courts traditionally assess three factors: the "chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Id.* (quoting *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015)). To promote "judicial efficiency, consistency, and comity," this rule "should not be disregarded lightly." *Kohn*, 787 F.3d at 1240. Here, all three factors support the transfer of this case to the District of Colorado, the locale of the first-filed case.

Mr. Fontenot filed his antitrust action in the District of Colorado on November 20, 2023, alleging that Defendants are raking in billions of dollars in revenue on the backs of elite athletes but not compensating these athletes anything close to what the fair market would require. *See supra* at 2. Seventeen days later, the *Carter* case was filed here. It contains the same allegation of wrongdoing

against the same Defendants. And because the proposed class is broader in *Fontenot*, the class proposed in *Carter* is subsumed by *Fontenot*. *See supra* at 2-3 (describing proposed classes).

The *Carter* plaintiffs already conceded in MDL proceedings "that *Fontenot* was the first-filed case." MDL No. 3105, ECF. 2-1 at 16 n.7 (Jan. 16, 2024). And in the same brief, they concede that the cases involve the same parties and similar issues. *Id.* at 5-6. The traditional factors for the first-to-file rule—chronology and similarity of parties and issues—are therefore not contested.

The *Carter* plaintiffs will likely argue that *House v. NCAA (In re College Athlete NIL Litig.)*, No. 4:20-cv-03919-CW (N.D. Ca. Jun 15, 2020) weighs against transfer. *House* is another case involving the NCAA brought by the same Plaintiffs' attorneys as the *Carter* case that has been in ongoing litigation for more than four years before Hon. Claudia Walker. In *House*, counsel for the *Carter* plaintiffs decided to proceed on a very different theory, challenging only NCAA's name-image-and-likeness ("NIL") rules, not its broader agreement with its members not to pay athletes the wages that the market would bear, which far exceed the revenue from their name-image-and-likeness. That is a key difference between the *House* case and the *Fontenot* case, and explains why the *Carter* plaintiffs did not ask the JPML to consolidate *House* with *Fontenot*. The *House* case challenges the NCAA's current NIL policy. The *Fontenot* case is not an NIL case; it seeks to directly challenge the NCAA's broader restraint on compensation. It takes aim at the full cut of revenue that these college athletes "would receive in a truly open market," *Fontenot*, ECF No. 78 at ¶ 102, rather than merely the revenue from their name, image, and likeness. Both an injunctive and a damages class have been certified in *House*. *See House*, No. 20-cv-03919-CW, ECF No. 323, Order Granting Motion for Certification Injunctive Relief Class (Sept. 22, 2023), ECF No. 387, Order Granting for Certification of Damages Classes (Nov. 3, 2023).

Significantly, the *Carter* plaintiffs sought to "relate" the *Carter* case to the *House* case, by identifying *House* as a related case on the civil cover sheet of the *Carter* complaint. *See Carter*, ECF No. 1. The *Carter* case was randomly assigned to Your Honor on December 12, 2023. ECF No 23. Hon. Claudia Wilken determined that "reassignment to me of the actions currently assigned to another judge is not warranted" on December 15, 2023. ECF No. 29.

There is no reason based on the *House* case (or other NCAA cases before Judge Wilken) to bypass the first-to-file rule and keep this lawsuit in the Northern District of California, rather than transferring it to the District of Colorado. Judge Wilken chose not to seek reassignment of the *Carter* case to her, recognizing that *Carter* and *House* are two different lawsuits that challenge different misconduct, with different legal theories and very different damages.

It was only after Mr. Fontenot filed his case that counsel in *House* decided to file the *Carter* case a few weeks later. Their filing of *Carter* is proof that there is a meaningful difference between the claims in their *House* case and the claims in *Fontenot* and *Carter*—otherwise there would have been no need to file *Carter*. And of course, there is a different judge presiding over the two cases. That means that the efficiencies that might have been gained by proceeding in front of Judge Wilken no longer apply. The same can be said when it comes to the other NCAA antitrust cases that Judge Wilken presided over, which the *Carter* plaintiffs will likely point to. This Court will be starting anew.

Judge Sweeney of the District of Colorado is fully capable of overseeing an antitrust case concerning Defendants' compensation rules. She is currently presiding over another antitrust case, *see OreControl Blasting Cons., LLC v. Hexagon Mining Inc.*, No. 22-cv-01853-CNS (D. Col.), and prior to becoming a judge, was a well-respected civil litigator regarding employment matters. Antitrust cases of various types against the NCAA and its members are percolating in several district courts challenging the legality of the NCAA's "amateurism" rules. *See, e.g.*, *Bewley v. Nat'l Collegiate Athletic Ass'n*, No. 23 CV 15570 (N.D. Ill.); *State of Ohio, et al. v. Nat'l Collegiate Athletic Ass'n*, No. 1:23-CV-100, (N.D.W. Va.); *State of Tennessee, et al. v. Nat'l Collegiate Athletic Ass'n*, No. 3:24-cv-33 (E.D. Tenn.). Just as the Northern District of West Virginia is fully capable of evaluating the NCAA's transfer rule restraints and issuing a restraining order, *State of Ohio*, 2023 WL 9103711, at *13, the District of Colorado can assess the legality of Defendants' ban on market-value compensation in *Fontenot*, and the Northern District of California can assess the legality of Defendants' NIL rules in *House*.

All the first-to-file factors are met, and they "should not be disregarded lightly." *Kohn*, 787 F.3d at 1240. Out of comity and to promote efficiency, the Proposed Intervenors respectfully ask the Court to transfer this case to the locale where these actions were first filed, or in the alternative, to dismiss this case or continue the stay already entered while the *Fontenot* case proceeds.

**Motion to Intervene and to Transfer, Dismiss, or Continue the Stay Pursuant to the First-to-File Rule**

**B. The 28 U.S.C. § 1404(a) factors support transfer.**

When analyzing first-to-file transfer motions, courts may also look to the factors used under 28 U.S.C. § 1404(a) for guidance. These factors include the "convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, [and] considerations relating to the interest of justice." *Activision Blizzard Inc. v. Acceleration Bay LLC*, No. 16-CV-03375-RS, 2016 WL 4548985, at *5 (N.D. Cal. Sept. 1, 2016) (discussing factors).

Here, there is no dispute regarding jurisdiction over parties, and no doubt that this case can be consolidated with *Fontenot* if transferred to the District of Colorado. Other factors also weigh in favor of the District of Colorado or are neutral.

The District of Colorado is much more convenient for most of the parties. The lead plaintiff in the *Carter* case (Mr. Carter) resides in Durham, North Carolina. Denver is approximately a thousand miles closer to Durham than San Francisco. And while there are multiple daily direct flights between Durham and Denver, there is only one direct flight between San Francisco and Durham—a six-hour flight that is approximately two hours longer than the flight to Denver.

Another plaintiff in *Carter*, Sedona Prince, resides in Fort Worth, Texas. Just like Mr. Carter, she lives significantly closer to Denver than to San Francisco. Five of the six Defendants reside much closer to Denver than to San Francisco: the NCAA is headquartered in Indianapolis, Indiana; the Big Ten in Rosemont, Illinois; the Big 12 in Irving, Texas; the SEC in Birmingham, Alabama (where there are no nonstop flights to San Francisco but three nonstop flights to Denver); and the ACC in Greensboro, North Carolina (where there are no nonstop flights to San Francisco but one nonstop flight to Denver). The convenience of the parties weighs strongly in favor of Denver over San Francisco.

Just two parties reside in this District. One of them, Defendant Pac 12, is on the verge of collapse and will likely not reside in this District much longer. At its peak, the Pac 12 conference had 12 members. Soon, it will only have two members, Oregon State and Washington State, leaving no members in California and no need for California operations. (As an unincorporated association, that means the Pac-12 is no longer even a citizen of California because none of its members are in

California.) Indeed, when litigating over control of the conference's assets, the remaining members chose to litigate in Washington state court. *Washington St. Univ., et al., v. Pac-12 Conference, et al.*, No. 23-2-0027338 (Superior Ct. of Wash., Sep. 8, 2023).

The other party residing in this District is Nya Harrison, a plaintiff in *Carter*. While litigating in this District may be more convenient for her, it would actually be less convenient for her two co-plaintiffs in *Carter*, as discussed above. And it would also be much less convenient for the five Defendants who reside much closer to Denver than to San Francisco. And it would certainly be much less convenient for the two named plaintiffs in *Fontenot*. Mr. Fontenot lives in Denver, where he brought the *Fontenot* case. His co-plaintiff, Ms. Hollingshed, went to school at the University of Colorado and remains a Colorado resident.

Any other considerations are a wash. As discussed *supra*, this District has handled (and is handling) prior antitrust cases against Defendants, but they were all handled by Judge Wilken. Her Honor's familiarity with the case therefore no longer weighs one way or the other. The ease of access to evidence is no different in Colorado than here: electronic documents can be produced anywhere, and many depositions will likely take place by Zoom; where an in-person deposition is required, it will likely occur in a locale near the witness, regardless of where the lawsuit is pending. Just as Colorado is more convenient for the vast majority of parties in the event the case goes to trial, it will be more convenient for the vast majority of witnesses—many of whom will be employees of Defendants coming from locations much closer to the District of Colorado than to California.

As for court congestion, both Districts have a large volume of cases that its judges are vigorously managing, but the District of Colorado is slightly less busy. The District of Colorado recently had its last vacancy filled, and it is now at full strength. This District, however, continues to have a yet-to-be-filled vacancy. This District is handling an average of 668 actions per judgeship, and over 2,000 cases (over 18%) are more than three years old, and a filing-to-trial average of 36.7 months. *See* National Judicial Caseload Profile, *available at* fcms_na_distprofile0930.2023.pdf (uscourts.gov) (last visited February 1, 2024). The District of Colorado, by contrast, has 569 cases per judgeship, with just 215 cases over three years old (7%), and a filing-to-trial average of 30.4 months. *Id.* This factor favors the District of Colorado.

The 28 U.S.C. § 1404(a) factors strongly favor the District of Colorado. The Court should adhere "to the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue." *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539, 545 (E.D.N.Y. 2018).

## CONCLUSION

Proposed Intervenors respectfully request the Court to permit intervention and to transfer this action to the District of Colorado, or alternatively, to dismiss this action or continue the stay already entered.

DATED: February 7, 2024

Respectfully submitted,

/s/ *Garrett R. Broshuis*

KOREIN TILLERY, LLC
STEPHEN M. TILLERY (*pro hac vice forthcoming*)
GEORGE A. ZELCS (*pro hac vice forthcoming*)
GARRETT R. BROSHUIS
MARC WALLENSTEIN (*pro hac vice forthcoming*)
CAROL O'KEEFE (*pro hac vice forthcoming*)

*Counsel for Proposed Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

/s/ *Garrett R. Broshuis*
Garrett R. Broshuis